UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VINAY K. KARNA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-cv-0101 |
| | § | |
| BP CORPORATION NORTH | § | |
| AMERICA, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Before the Court in this Fair Labor Standards Act ("FLSA") case is Plaintiff Vinay K. Karna's Motion for a New Trial and/or Reconsideration under Rule 59. ("Plaintiff's Motion"; Doc. No. 92.) Mr. Karna seeks a new trial, arguing that 1) the Court's ruling on the parties' summary judgment motions, Doc. No. 55, erroneously deprived him of trial on his quantum meruit and wrongful termination claims; and 2) the jury's verdict that he was a computer professional exempt from the protections of the FLSA was against the weight of the evidence and should be overturned. After reviewing the evidence and argument presented by the Parties, as well as their submissions and the relevant law, the Court is not persuaded that a new trial is warranted. Consequently, Mr. Karna's Motion is **DENIED**.

## I.      BACKGROUND

Mr. Karna is a former employee of Defendant BP Corporation North America, Incorporated ("BP"). He brought this action against his former employer, alleging violations of the FLSA, 29 U.S.C. §§ 201-219, as well as several Texas state law claims: breach of contract, quantum meruit, negligent misrepresentation, fraudulent misrepresentation, promissory estoppel, and wrongful discharge. Pl.'s First Am. Orig. Pet. ("Petition"; Doc. No. 1.) The facts of the case

are set out more fully in the Court's summary judgment order, and are incorporated here by reference. *See* Mem. & Order, Mar. 19, 2013. (Doc. No. 55.)

At summary judgment, the Court dismissed Mr. Karma's negligent misrepresentation, fraudulent misrepresentation, promissory estoppel, and wrongful discharge claims and determined that his quantum meruit claim was preempted by the FLSA. Doc. No. 55. Mr. Karna later dismissed his breach of contract claim. Doc. Nos. 67-68. Mr. Karna's remaining claims were then tried before a jury. The jury was asked to decide (1) whether Mr. Karna was exempt under the FLSA's computer professional exemption during the relevant time period; (2) whether BP's failure to pay overtime compensation was willful; and (3) the amount of Mr. Karna's damages. After hearing the evidence, the jury concluded that Mr. Karna's employment satisfied the requirements of the FLSA's computer professional exemption; consequently, the jury did not address the other questions. Thereafter, the Court entered final judgment in accordance with the jury's verdict and its summary judgment decision. Doc. No. 90. The pending motion followed.

## II.   LEGAL STANDARDS

### A.  Reconsideration

Though the Federal Rules of Civil Procedure do not themselves specifically provide for a motion for reconsideration, such motions nevertheless are entertained under the Rules. They are generally analyzed under the standards for a motion to alter or amend a judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Here, Mr. Karna seeks reconsideration under Rule 59. A motion under Rule 59(e) must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.

1990) (internal quotation marks omitted)). Such motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory." *Id.* In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). While a district court has "considerable discretion" to grant or deny a motion under Rule 59(e), *id.*, the Fifth Circuit cautions that reconsideration under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

### B. New Trial

Federal Rule of Civil Procedure 59 also states that a court may, on motion, grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A court therefore may grant a new trial if it finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). A new trial may also be granted when the jury's inconsistent verdict cannot be reconciled. *See Crossland v. Canteen Corp.*, 711 F.2d 714, 726 (5th Cir. 1983). In short, courts are to assess "the fairness of the trial and the reliability of the jury's verdict." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). When a party moves for a new trial on evidentiary grounds, a new trial should not be granted unless "the verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998). The decision to grant a new trial lies within the discretion of the court. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982).

### III.    ANALYSIS

Mr. Karna brings two challenges to the Court's summary judgment decision and attacks the jury's verdict on one ground. Regarding summary judgment, he argues that the Court erred in ruling that his state law quantum meruit claim for unpaid compensation is preempted by the FLSA. Consequently, he asserts, when the jury found that he was exempt from the FLSA's wage and hour protections, he was unable to recover even the hourly wages BP had promised him. He also claims that the Court ignored evidence establishing his wrongful termination claim, and thus prevented the jury from deciding that issue as well. In addition to these, Mr. Karna challenges as against the weight of the evidence the jury's verdict that he was a computer professional exempt from the FLSA's minimum wage and maximum hour provisions.

### A.  The Quantum Meruit Claim

Mr. Karna seeks reconsideration of the Court's ruling that his quantum meruit claim is preempted by the FLSA. *See* Mem. & Order at 36-39, Mar. 19, 2013. (Doc. No. 55.) He argues that the Court's preemption ruling and the jury's FLSA exemption finding combined to prevent him from recovering even the *base hourly* compensation promised him for the hours he claims to have worked, whether over or under the inapplicable statutory maximum. Importantly, Mr. Karna asserts that he is *not* seeking the overtime premium compensation promised by Section 7 of the FLSA. *See* Pl. Karna's Reply Def. BP's Resp. Mot. New Trial and/or Recons. under Rule 59 at 2-3 ("Plaintiff's Reply"; Doc. No. 94).

Mr. Karna first cites *Freeman v. City of Mobile, Alabama*, 146 F.3d 1292 (11th Cir. 1998), in support of his argument against preemption. *Freeman* stands for the proposition that some state-law claims, such as those arising under a state statute or local ordinance which provides certain public sector employees overtime protections stronger than those of the FLSA,

4

may not necessarily be preempted by the FLSA: "[A] personnel ordinance may establish a contract entitling local government employees to overtime pay. Such a contract may give employees rights to overtime compensation beyond those required by the FLSA (i.e., the FLSA does not preempt state law contract provisions that are more generous than the FLSA demands)." *Id.* at 1298 (internal citations omitted).

In response, BP correctly argues that, in Texas, a quantum meruit claim is available only in the absence of a contract. *See* Mem. & Order at 36, Mar. 19, 2013 (Doc. No. 55) (citing *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 406 (5th Cir. 2000)). *Freeman*, however, solely concerns *contracts* giving certain employees "rights to overtime compensation beyond those required by the FLSA." BP reminds the Court that Mr. Karna has repeatedly asserted that he was *not* employed under a contract. *See, e.g.*, Pl. Karna's Resp. Def. BP's Mot. Summ. J. at 29 ("Plaintiff's MSJ Response"; Doc. No. 35) ("[T]here are no express contracts between the parties covering the unpaid services that Karna rendered for BP."). *Freeman* is thus inapposite here.

Mr. Karna also argues that, because he could still prevail on his quantum meruit claim, even though he can no longer succeed on his FLSA claim (because he was found to be an exempt employee), the claims are not duplicative, making preemption inappropriate. In support, Mr. Karna cites *Diallo v. Alo Enterprises Corporation*, No. 12-3762, 2013 WL 3772827 (D.N.J. July 17, 2013). There, the court was considering whether to allow Mr. Diallo to amend his complaint to add state law breach of contract claims in addition to his FLSA overtime and minimum wage claims. The question was whether the FLSA preempted the state law claims, but the central issue was Mr. Diallo's employment status: was he an employee within the meaning of the FLSA or an independent contractor? The court reasoned that the fact that employment status was at issue argued against preemption because, if Mr. Diallo was found to be an employee, he could proceed

with his FLSA claims. On the other hand, if he was found to be an independent contractor, he could proceed with his state law breach of contract claims.

Here, BP is correct that Mr. Karna's status as an employee was *not* at issue in deciding the preemption question; the Court had already determined that he was an employee during the relevant period. Mem. & Order at 24, Mar. 19, 2013. (Doc. No. 55.) While BP finds that distinction dispositive of the issue, the Court disagrees. Instead, the Court finds the *Diallo* court's reasoning persuasive. The Court concludes that Mr. Karna's quantum meruit claim is *not* cognizable under the FLSA, and therefore is not preempted.

Mr. Karna brought this action in order to recover compensation he claims he was not paid for hours that he worked. In the relevant time period, he was paid hourly; he was not a salaried employee. Mem. & Order at 2-3, Mar. 19, 2013. (Doc. No. 55.) Section 7 of the FLSA requires covered employers to compensate nonexempt employees with an overtime premium rate of one-and-one-half times the base rate of pay for time worked in excess of forty hours each work week. 29 U.S.C. § 207(a); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001). Because the alleged unpaid hours were in excess of this statutory maximum, Mr. Karna brought a claim seeking Section 7's overtime premium rate, arguing that he was a nonexempt employee. Pet. ¶¶ 33-45. Simultaneously, he brought a quantum meruit claim seeking to recover nothing more than the base rate allegedly promised him for each hour worked:

> 24. Karna rendered valuable services to BP for its benefit. Not only did BP accept and enjoy Karna's services, it actually directed him to perform those services. BP knew, or should have known, that Karna expected [BP] to pay for his services, and did not intend to work for BP for free.

> 25. Karna hereby seeks recovery of his actual damages, including the reasonable value of the services he rendered for BP for which he was not paid.

*Id.* ¶¶ 23-26. This is where *Diallo* is instructive. Just as Mr. Diallo could have pursued either his FLSA claims *or* his breach of contract claim, depending on whether he was found to be eligible under FLSA, so too, here, Mr. Karna could have pursued *either* his FLSA claim for overtime premium compensation *or* his quantum meruit claim for hourly base-rate compensation, depending on whether he was eligible to claim the FLSA's protections. He could not have recovered under both claims, but if he was ineligible for the overtime premium rate, he could still have recovered the base rate of pay for the hours he claims to have worked. This is because Mr. Karna's quantum meruit claim is *independent* of the FLSA: it is neither predicated upon a FLSA violation, nor does it seek any remedy provided by the FLSA.

Mr. Karna's quantum meruit claim simply does not state a violation of the FLSA. As Mr. Karna persuasively argues, the Fourth Circuit's decision in *Anderson v. Sara Lee Corporation* is instructive. 508 F.3d 181 (4th Cir. 2007). There, the Fourth Circuit based its finding of preemption in part on the fact that the state law claims "all depend[ed] on establishing that Sarah Lee violated the FLSA, either in good faith or willfully." *Id.* at 193. Indeed, several of the courts in the Fifth Circuit that have found state law claims to be preempted by the FLSA have also determined that those claims were grounded in FLSA violations. *See, e.g.*, *Newsom v. Carolina Logistics Servs., Inc.*, No. 2:11CV172-DCB-JMV, 2012 WL 3886127, at *3 (N.D. Miss. Sept. 6, 2012) (noting that courts in the Fifth Circuit "have held that where the claim at issue is pled as an alternative cause of action for conduct that is addressed by the FLSA and for which the Act provides a remedy, the common law claim is preempted"); *Lilani v. Noorali*, No. H-09-2617, 2011 WL 13667, at *8 (S.D. Tex. Jan. 3, 2011) (finding preemption where "Lilani's breach-of-contract claim relies on the FLSA with respect to her right to receive fair wages, and invokes Texas contract law only as the source of remedies for the alleged infringement of that right.");

*Guerrero v. JPMorgan Chase & Co.*, No. 6:09CV388, 2010 WL 457144, at *4 (E.D. Tex. Feb. 5, 2010) (finding preemption where "Plaintiff is seeking relief under state law theories of recovery for Defendant's alleged violation of the FLSA.").

The same is not true in this case; Mr. Karna's quantum meruit claim does *not* require establishing that BP violated the FLSA. It is true that the hours for which he claims he was not compensated happen to be over forty, but he does not allege that he was not paid Section 7's premium overtime rate. Rather, he argues that he was not paid *at all* for those hours, and seeks only the pay he claims he was promised. Without a claim for either the minimum wage or the overtime premium rate, Mr. Karna is not alleging a FLSA violation. *See Casey v. Rainbow Grp., Ltd.*, 109 F.3d 765 at *5 (5th Cir. 1997) ("The liability provisions of the act . . . are confined to providing reparation for unpaid overtime compensation and unpaid minimum wages" (internal quotation marks omitted)). Mr. Karna could thus present this alternative legal theory for recovery of lost wages if it were determined that he was exempt from the FLSA's maximum hour and overtime premium compensation provisions (which the jury ultimately did).[1]

Courts have recognized an analogous situation elsewhere in the FLSA. A claim seeking "compensation for hours worked in a week that are not in excess of forty, [when] the average wage paid over all hours worked fewer than forty is not below minimum wage," is known as a "gap time," or "straight time" claim. *Floridia v. DLT 3 Girls, Inc.*, No. 4:11-CV-3624, 2013 WL 127448 at *5 (S.D. Tex. Jan. 9, 2013). While Section 6 of the FLSA guarantees a minimum wage, it does not provide a right of action for employees to recover unpaid compensation in

---

[1] The jury found Mr. Karna to be an exempt employee, meaning only that he was not entitled to Section 7's premium overtime rate, not that he was not entitled to any pay whatsoever for hours worked over forty. Section 13 of the FLSA exempts certain classes of employees from Section 7's overtime compensation and maximum hour requirements (as well as other requirements not relevant here). 29 U.S.C. § 213(a). Nowhere, however, do Section 13's exemptions relieve employers of their contractual or other obligations regarding hourly compensation, including hours worked over forty in a week. Rather, Section 13 merely provides that exempt employees are not entitled to Section 7's guarantee of an overtime premium rate for hours worked in excess of forty in a week.

excess of that minimum wage. *See* 29 U.S.C. § 206. Consequently, courts have routinely found that such "gap time" claims are not cognizable under the FLSA. *See, e.g*, *Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 811 (N.D. Tex. 2009) ("Claims for unpaid straight-time wages that do not implicate the minimum wage or overtime pay requirements are generally not cognizable under the FLSA."); *Green v. Dallas Cnty. Schs.*, No. 304CV891P, 2005 WL 1630032 at *3 (N.D. Tex. July 6, 2005) (collecting cases).

It is true, as this Court recognized in its preemption decision, that Mr. Karna is not making a classic "gap time" claim with his quantum meruit claim. Mem. & Order at 38, Mar. 19, 2013. (Doc. No. 55.) Mr. Karna is making an analogous claim, though. Just as Section 6 does not generally regulate an employee's hourly wages above its guaranteed minimum wage for hours worked *under* forty in a week, Section 7 does not serve to regulate hourly wages for hours worked *over* forty in a week by employees exempt from Section 7's maximum hour and overtime compensation provisions. A claim such as Mr. Karna's quantum meruit claim, which does not seek Section 7's overtime premium rate, but, rather, simply the base rate of pay he alleges he was promised for every hour worked, is an overtime equivalent of a pure "gap time" claim. Thus, just as a "gap time" claim is not cognizable under the FLSA, neither is Mr. Karna's overtime "gap time" analogue. What Mr. Karna brings is "a claim separate and distinct from one brought under the FLSA for failure to pay adequate overtime compensation . . . ." *Doan v. Portable Prod. Servs., LP*, No. H-11-0261, 2011 WL 2038580, at *4 (S.D. Tex. May 19, 2011).

Therefore, because Mr. Karna's quantum meruit claim seeks neither the statutory minimum wage nor the statutory overtime premium rate, it cannot be said to be preempted by the FLSA.[2] *See Newsom*, 2012 WL 3886127, at *3 ("[W]here the state law claim affords a remedy

---

[2] The Court repeats its previous observation that the Fifth Circuit "has not issued a published opinion on whether the FLSA preempts state law claims." Mem. & Order at 37, Mar. 19, 2013 (Doc. No. 55) (citing *Floridia*, 2013 WL

for conduct not otherwise addressed by the FLSA, there is no preemption.") (citing *Washington v. Freds Stores of Tennessee, Inc.*, 427 F. Supp. 2d 725, 729 (S.D. Miss. 2006)); *Doan*, 2011 WL 2038580, at *4 ("The plaintiffs' breach-of-contract claim, however . . . alleges that [defendant] undercompensated the plaintiffs relative to the agreed payment structure, which is a claim separate and distinct from one brought under the FLSA for failure to pay adequate overtime compensation or failure to pay minimum wages. . . . Accordingly, the court concludes that the plaintiffs' claim for breach of the oral agreement, to the extent it does not seek unpaid minimum wages or unpaid overtime compensation, is not preempted by the FLSA."); *see also Guerrero*, 2010 WL 457144, at *4 (finding preemption when "[t]he complaint does not assert state law claims wholly aside from or independent of the FLSA").

This is so because, to the extent the FLSA can be held to preempt state law claims, courts have determined that it does so according to an implied conflict preemption theory, whereby state law claims are preempted only when "it would be 'physically impossible' for a private party to comply with both federal and state law," or when "the law 'stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry*, 476 F.3d 326, 334 (5th Cir. 2007) (quoting *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 336 (5th Cir. 2005)); *see Anderson*, 508 F.3d at 191-95; *Floridia*, 2013 WL 127448, at *5; *Lilani*, 2011 WL 13667, at *7-*8. Courts that have found preemption have largely concluded that Congress intended to "prescribe[] exclusive remedies in the FLSA for violations of its mandates." *Anderson*, 508 F.3d at 194 (collecting cases). Apart from its minimum wage and overtime provisions, the FLSA does not generally provide a remedy against employers who simply fail to compensate employees

127448, at *5); *see Carman v. Meritage Homes Corp.*, No. 4:11-CV-1824, 2014 WL 808257, at *4 (S.D. Tex. Feb. 28, 2014).

according to an alleged agreed compensation scheme. *See Casey*, 109 F.3d 765 at *5 ("The liability provisions of the act . . . are confined to providing reparation for unpaid overtime compensation and unpaid minimum wages" (internal quotation marks omitted)); 29 U.S.C. § 216. Because a claim such as Mr. Karna's, which seeks to recover only the base rate allegedly promised for all hours worked (including those over forty), is independent of the FLSA and does not conflict with its remedy structure, such a claim cannot properly be said to conflict with Congressional objectives behind the FLSA either. Indeed, particularly because of the broad construction due the FLSA, it would be an odd and even perverse result if it were read to *prevent* an employee from recovering *any* compensation for work performed. *See, e.g.*, *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (recognizing FLSA's remedial purposes); *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1296 (11th Cir. 2003) ("FLSA is a remedial statute that has been construed liberally to apply to the furthest reaches consistent with congressional direction." (internal citations omitted)).

Therefore, the Court is persuaded that its previous preemption ruling was legally incorrect, and that Mr. Karna's claim is not preempted by the FLSA. Nevertheless, the Court cannot say that Mr. Karna is now entitled to a new trial on his quantum meruit claim. The Court's previous preemption determination was made in the course of adjudicating a summary judgment motion from BP. Def. BP Corp. North America, Inc.'s Am. Mot. Summ. J. at 9-12. ("Defendant's MSJ Motion"; Doc. No. 45.) The Court raised the question of preemption *sua sponte*, and, in resolving the issue on preemption grounds, the Court did not reach the merits. Mem. & Order at 39, Mar. 19, 2013. (Doc. No. 55.) The issue is fully briefed: in addition to discussing preemption in their summary judgment briefing, the parties also addressed the merits of the quantum meruit claim in depth. Accordingly, having determined that the claim is not

preempted by the FLSA, the Court will proceed to address its merits. The Court may be persuaded that Mr. Karna's quantum meruit claim is not preempted by the FLSA, but it is not persuaded that the claim survives summary judgment.

Before analyzing the merits of the quantum meruit claim, a brief review of the summary judgment standard is appropriate. Under Federal Rule of Civil Procedure 56, summary judgment is warranted if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Importantly, "the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis v. Roche Biomed. Lab.*, 61 F.3d 313, 315 (5th Cir. 1995). Material facts are those whose resolution "might affect the outcome of the suit under the governing law . . . ." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact, but it need not negate the elements of the nonmoving party's case. Fed. R. Civ. P. 56(a); *Willis*, 61 F.3d at 315 (citing *Celotex*, 477 U.S. at 322-23); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). If the burden of proof at trial lies with the nonmoving party, the moving party may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party must come forward with specific evidence in order to raise a genuine issue of material fact. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Simply resting on the

allegations in the pleadings will not suffice. Neither will this burden be satisfied "by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, a court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The Texas Supreme Court has defined quantum meruit as "an equitable remedy that is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (internal quotation marks omitted). In Texas, "[t]o recover under the doctrine of quantum meruit, a plaintiff must establish that: 1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). In addition, "[a] party generally cannot recover under *quantum meruit* when there is a valid contract covering the services or materials furnished." *In re Kellogg Brown & Root*, 166 S.W.3d at 740.[3] "This rule not only applies when a plaintiff is seeking to recover in quantum

---

[3] Specifically, "[a] plaintiff seeking to recover the reasonable value of services rendered or materials supplied is precluded from recovering in quantum meruit if there is an express contract *that covers those services or materials* and if no exception to the general rule applies." *Pepi Corp.*, 254 S.W.3d at 462 (citing *Hester*, 132 S.W.3d at 106). Such exceptions include: (1) when a plaintiff partially performs a contract, but the defendant's breach prevented the plaintiff from full performance or the partial performance was not otherwise the fault of the plaintiff; (2) when the contract is unilateral or otherwise unenforceable (such as when it is entered into by an unauthorized agent); and (3) when a plaintiff in a construction contract breaches, she may be able to recover the reasonable value of services (less any damages suffered by the defendant), if the defendant accepts the benefits of that partial performance. *Truly v. Austin*, 744 S.W.2d 934, 936-38 (Tex. 1988); *W & W Oil Co. v. Capps*, 784 S.W.2d 536, 537-38 (Tex. App.—Tyler 1990, no writ); *Angroson, Inc. v. Indep. Commc'ns, Inc.*, 711 S.W.2d 268, 270-71 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Neither of the parties asserts or even addresses any of these exceptions. The Court is satisfied that none applies in this case: there is not even a suggestion that Mr. Karna partially performed the contracts at issue, and no construction contracts are involved. Mr. Karna does claim that he did not sign any of the relevant contracts, but the

meruit from the party with whom he expressly contracted, but also when a plaintiff is seeking to recover 'from a third party foreign to the original [contract] but who benefited from its performance.'" *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 462 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (quoting *Hester v. Friedkin Cos., Inc.*, 132 S.W.3d 100, 106 (Tex. App—Houston [14th Dist.] 2004, pet. denied)).

BP made two arguments for summary judgment on Mr. Karna's quantum meruit claim. First, it argued that summary judgment was appropriate because a valid contract existed which covered the services provided by Mr. Karna during the relevant time period. Second, it argued that, regardless of the existence of a contract, Mr. Karna did not provide evidence sufficient to defeat summary judgment that he had not "reasonably notified" BP of his expectation to be paid. The Court agrees that a valid contract existed and thus does not reach the second issue.

The summary judgment record contains contracts that plainly cover the services Mr. Karna provided to BP during the relevant time period. Def.'s MSJ Mot., Ex. D. (Doc. No. 23-1.) There are two relevant kinds of contracts in the record. A Professional Services Agreement ("PSA") details the agreement for services between BP and Ideal Staffing Services L.L.C. ("Ideal"). Through various Supplier Agreements, Ideal sub-contracted with Deep Consulting ("Deep"), LSR Consulting, LLC ("LSR"), and RD Data Solutions, LLC ("RD") for Mr. Karna's services. The Court has already noted that,

> Karna at one point owned Deep, as well as a number of other consulting companies which entered into agreements with Ideal to cover Karna's work at BP. (Karna Dep. 35:9–12; 41:4–21; Def.'s Mot., Exs. D-1, D-2, D-3, Supplier Agreements with Ideal.) His wife, a co-owner of Deep, actually executed a number of the agreements between Deep and Ideal. (Karna Dep. 41:4–21; Def.'s Mot., Exs. D-1, D-2, Supplier Agreements with Ideal.)

---

discussion below resolves that issue against him. In any event, Mr. Karna does not make the claim that those who did sign the contracts were unauthorized agents, and the Court is satisfied that the contracts are otherwise valid.

Mem. & Order at 2 n.2, Mar. 19, 2013. (Doc. No. 55.) At this point, the Court would only add that Mr. Karna appears to have signed the Supplier Agreement between Ideal and RD as a "Principal" of RD. Def.'s MSJ Mot., Ex. D-3, Assignment Confirmation Form. (Doc. No. 23-1.)

Under these contracts, Mr. Karna was to submit his hours worked through the subcontractor to ISS, and he would then be paid his hourly rate for each hour worked using the same channels. *Id.*, Supplier Agreements ¶ 5, Assignment Confirmation Forms at 1; *Id.*, Ex. B, Oral Depo. Vinay K. Karna at 81:8-10, 106:25-107:23, 237:3-238:17, Nov. 28, 2012 ("Karna Deposition"; Doc. No. 21-1). Mr. Karna's claim that no contract covers the hours he worked above those he submitted to Ideal is unavailing. *See* Pl.'s MSJ Resp. at 29. The Supplier Agreements state that "Supplier will submit an invoice for their services to ISS." Def.'s MSJ Mot., Ex. D-3, Supplier Agreements ¶ 5. (Doc. No. 23-1.) By their terms, neither the Supplier Agreements nor the PSA limits the hours for which Mr. Karna could request payment. The Court can only conclude, then, that these contracts expressly cover *all* the hours Mr. Karna worked.

Mr. Karna also tries to escape summary judgment by arguing that he did not sign the Supplier Agreements, that he was not a party to the PSA, and that the Supplier Agreements state that the third-party beneficiary of the Agreements is "BP Americas, Inc.," while his employer was BP Corporation North America, Incorporated. Pl.'s MSJ Resp. at 6-7. All of these assertions are true. *See* Def.'s MSJ Mot., Ex. D. (Doc. No. 23-1.) Nevertheless, they are insufficient to rescue Mr. Karna's claim. The Court will address each argument in turn.

First, though Mr. Karna may not have personally signed all of the Supplier Agreements, they were agreed to on behalf of companies which he either owned or controlled, and he does not argue that those actions were taken without his knowledge or against his direction. Second, the fact that Mr. Karna is not a party to the PSA will not serve to invalidate it as a controlling

contract for these purposes. Texas law is clear on this subject: the rule that a plaintiff cannot recover in quantum meruit when there is an express contract governing the goods or services at issue also applies "when a plaintiff is seeking to recover 'from a third party foreign to the original [contract] but who benefited from its performance.'" *Pepi Corp*, 254 S.W.3d at 462 (quoting *Hester*, 132 S.W.3d at 106). BP was not a party to the contracts between Ideal and Mr. Karna, but it undisputedly benefited from Mr. Karna's performance of the contract – it was named as the third-party beneficiary, after all. BP was Ideal's client, and, by the terms of the Supplier Agreements, Mr. Karna was to provide his services directly to the client, which he did. Thus, it is of no consequence that Mr. Karna was not a party to the agreement between BP and Ideal – Mr. Karna seeks to recover from BP, there were express contracts specifically governing the services Mr. Karna provided to BP, and BP benefitted from the performance of those contracts. These facts foreclose Mr. Karna's quantum meruit claim as a matter of law.

Third, it is clear from the Supplier Agreements that Mr. Karna was to perform his services for Ideal's client, who is expressly listed as a third-party beneficiary. *See* Def.'s MSJ Mot., Ex. D, Supplier Agreements. (Doc. No. 23-1.) Though the Supplier Agreements all state that Ideal's client is "BP Americas, Inc.," the PSA, which governs the relationship between Ideal and its client, makes clear that, by the time of the earliest Supplier Agreement in evidence – August 2005 – Ideal's client was actually BP Corporation North America. In an amendment to the PSA signed at the end of March 2005, the name of the BP beneficiary of the PSA was changed to "BP Corporation North America, Inc." Am. No. 3 to the PSA at 1. (Doc. No. 23-1.) Regardless of whether Mr. Karna was aware of the PSA's precise terms, he knew he was to provide services to BP. Karna Depo. 33:6-34:12. That the Supplier Agreements erroneously listed "BP Americas, Inc." as the third-party beneficiary does not invalidate the contracts or

somehow remove Mr. Karna's work for BP from control by the Supplier Agreements and the PSA. *See Beckham v. Scott*, 142 S.W. 80, 83 (Tex. Civ. App.—Dallas 1911, no writ) ("A contract must be read in accordance with the intentions and understanding of the parties, notwithstanding clerical errors and omissions; and a party will be held to that meaning which he knew the other party to the contract understood the contract to mean."); *see also MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) ("A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit.")

Moreover, BP correctly points out that Mr. Karna knowingly performed work for BP under the contracts and received their benefits, thereby ratifying them under Texas law. *See Mo. Pac. R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792-93 (Tex. App.—Austin 2002, pet. dism'd) ("Ratification occurs if a party recognizes the validity of a contract by acting or performing under the contract or by otherwise affirmatively acknowledging it. . . . Once a party ratifies a contract, it may not later withdraw its ratification and seek to avoid the contract.") (internal citations omitted). Mr. Karna must have known that he did not sign the contracts governing his work for BP. Nevertheless, he worked, submitted invoices, and accepted payment according to them. He cannot now seek to escape the very contracts he affirmatively ratified by such conduct. These contracts expressly governed Mr. Karna's work for BP and therefore preclude recovery in quantum meruit.

In sum, while the Court has determined that it erred in ruling that Mr. Karna's quantum meruit claim was preempted by the FLSA, the Court concludes that Mr. Karna is not entitled to a new trial on that claim because summary judgment on the merits is warranted.

### B.  The Wrongful Termination Claim

In his second challenge to the Court's summary judgment order in this case, Mr. Karna argues that the Court ignored evidence that "BP began harassing Karna immediately after he refused to engage in illegal activity on behalf of the company." Pl.'s Mot. at 2. Mr. Karna neither provides newly discovered evidence nor legal authority that would disturb the Court's previous ruling granting summary judgment on this claim. In fact, the Court agrees with BP that, in his paragraph-long explanation of this challenge, Mr. Karna merely repeats the same legal arguments made at the summary judgment stage, with the same evidence. *See* Pl.'s Mot. at 2. The Court has previously rejected these arguments and sees no reason to reconsider its decision.

### C.  The Jury's Computer Professional Exemption Verdict

Finally, Mr. Karna argues that the weight of the evidence presented at trial is against the jury's verdict that he was a computer professional within the meaning of the FLSA and therefore statutorily exempt from its overtime premium rate guarantee. Mr. Karna faces a high bar for a new trial based on such a claim, and he falls short. The Court simply cannot conclude that the "great weight" of the evidence adduced at trial is against the jury's verdict. *See Pryor*, 138 F.3d at 1026. Mr. Karna contests the jury's verdict on two grounds. First, he argues that the evidence shows that he was not paid the requisite $27.63 per hour worked that the FLSA requires. Second, he argues that the evidence shows that his primary duties did not qualify him as a computer professional within the meaning of the FLSA. The Court considers each argument below.

#### 1. Hourly Compensation

BP raises several arguments, both procedural and substantive, against Mr. Karna's claim that he was not paid the $27.63 per hour required by the FLSA's computer professional exemption. Def. BP Corp. North America, Inc.'s Resp. to Karna Mot. for New Trial and/or

Recons. under Rule 59 at 11-15 ("Defendant's Response"; Doc. No. 93). As a threshold matter, BP is correct that Mr. Karna stipulated at trial that, in fact, he "was *compensated* on an hourly basis at a rate not less than $27.63 an hour." Jury Instruction No. 6 (emphasis added). The Court instructed the jury to "treat [this] fact[] as having been proved." *Id.* It is not the case that this stipulation could be interpreted as addressing Mr. Karna's hourly *rate*, as opposed to his actual hourly *compensation*, because there are other, entirely separate stipulations which address Mr. Karna's hourly rate. *Id.* Consequently, Mr. Karna has no ground now to claim that BP did not affirmatively prove this fact, and this challenge must fail.

### 2. Primary Duties

Mr. Karna also challenges the jury's finding concerning his primary work duties as not reflective of the weight of the evidence. Mr. Karna claims that BP's trial evidence on this subject involved only a small sampling of the relevant evidence, and that the two witnesses who testified regarding that evidence, Daphne Adams and Rajendra Gunda, testified that his work involved duties coming within the exemption only a small fraction of the time. Mr. Karna contends that "all the witnesses" instead stated that his primary work duty was to act as a liaison between BP and IBM personnel who were doing computer-related work for BP. Pl.'s Mot. at 7.

The FLSA provides that, in order for the computer professional exemption to apply, the employee's "primary duty" must be:

> (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; *or*
> (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills . . .

29 U.S.C. § 213(a)(17) (emphasis added); *see* 29 C.F.R. § 541.400. The applicable regulation defines "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Indeed, the regulation goes on to specify the nature of the "primary duty" inquiry:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.* Significantly, while the regulation does provide that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," it also clarifies that, "[t]ime alone, however, is not the sole test . . . . Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.* § 541.700(b). An employee's "primary duty" usually is what the employee does that is of principal value to the employer. *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990). As BP notes in its brief, these definitions were all included in the jury instructions. *See* Jury Instructions 11-12. Only if the "great weight" of the evidence does *not* support the conclusion that Mr. Karna's employment satisfied these criteria will the Court be justified in granting a new trial. *See Pryor*, 138 F.3d at 1026.

The Court can only conclude that the great weight of the evidence is not contrary to the jury's verdict. At trial, BP presented numerous documents and testimony to substantiate its account of Mr. Karna's duties. While he criticizes the decisions BP made in selecting its

evidence for trial, other than his general characterizations of witness testimony, Mr. Karna points to no other trial evidence even suggesting that his work duties did not fall within the computer professional exemption requirements. BP points to emails in Defendant's Trial Exhibit 54 as illustrating that Mr. Karna did indeed do the work of a computer professional as defined above, and that it was an important part of his job. While Mr. Karna may have served as a liaison between BP and IBM, what the evidence reveals is that this liaison job required the possession and application of high levels of technical knowledge. Indeed, the evidence supports the conclusion that Mr. Karna's application of that technical knowledge satisfied the computer professional exemption's criteria.

For example, the Court agrees that the emails in Defendant's Exhibit 54 show that Mr. Karna's work with BP and IBM on the WR5 system, particularly on technical enhancements and on approving and making ongoing, necessary technical changes, falls within the scope of the exemption. *See* 29 U.S.C. § 213(a)(17)(B) (concerning "the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications"). Further, the duties listed in the job posting for Mr. Karna's position, Defendant's Exhibit 29, support the jury's verdict as well. In addition to demonstrating that Mr. Karna's duties involved the design, development, analysis, testing, and modification of computer systems or programs, the job posting also states shows that Mr. Karna's job included duties amounting to "consulting with users, to determine hardware, software, or system functional specifications." *Id.* § 213(a)(17(A).

Mr. Karna contends that his work only included duties consistent with the computer professional exemption for a minimal amount of time, generally citing testimony from Daphne Adams and Rajendra Gunda. As the regulation quoted above makes clear, however, the amount

of time spent on exempt duties is not dispositive. The duties listed in the job posting can only be considered the duties most central to Mr. Karna's job, and, according to the evidence presented at trial, such duties do appear to have been integral to Mr. Karna's work. Moreover, Mr. Karna admitted to performing these duties. Indeed, testimony from Mr. Karna, Ms. Adams, Ms. Gunda, and Mr. McElhaney is consistent with the documentary evidence. The Court simply cannot conclude that the great weight of the evidence was against the jury's verdict. Accordingly, this challenge too must fail.

## IV.      CONCLUSION

For the above reasons, the Court finds that Mr. Karna's Motion for a New Trial (Doc. No. 92) must be **DENIED**. While the Court **VACATES** its previous ruling that Mr. Karna's quantum meruit claim was preempted by the FLSA, it nevertheless cannot grant Mr. Karna the relief he seeks – a new trial – because the Court has concluded that it must **GRANT** summary judgment as to the quantum meruit claim. In addition, the Court **DENIES** reconsideration of its ruling on Mr. Karna's wrongful termination claim as well as Mr. Karna's request for a new trial concerning the jury's verdict that he was an exempt computer professional.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the thirty-first day of March, 2014.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE